Van Voorhis, J.
This is an appeal by permission of the Appellate Division, First Department, from its order unanimously affirming two Special Term orders, of which one denied defendants’ motion for judgment on the pleadings dismissing the complaint under rule 112 of the Buies of Civil Practice, and the other denied a similar motion for summary judgment dismissing the complaint under rule 113.
The case has been here before on appeal from a declaratory judgment (combined with injunctive relief) determining that plaintiff Drinkhouse was a subtenant of an apartment at 67 Park Avenue, Manhattan (Parka Corp. v. Drinkhouse, 281 App. Div. 858, affd. 305 N. Y. 885). The upshot of that decision was that although the apartment had been surrendered by the *86 original tenant, nevertheless Drinkhouse had become her subtenant entitled to the protection of the State Residential Rent Law (L. 1946, ch. 274, as amd.).
The injunctive relief in the declaratory judgment consisted of the following mandate: “ That the plaintiff, Parka Corporation, its agents, servants or employees, be and they hereby are enjoined and restrained from depriving defendant [Drink-house] of his right to resume full and complete possession and occupancy of said apartment unless and until defendant be ordered removed from said' apartment by a court of competent jurisdiction. ’ ’
The declaratory judgment with its accompanying injunctive relief was entered January 8, 1952, and, as stated, was affirmed in all courts. The complaint in the present action alleges that on June 30, 1951, Parka Corporation and Forelli, its managing agent, ejected Drinkhouse from said apartment in breach of his statutory subtenancy.
After the former action had been decided by Special Term, Parka offered to readmit Drinkhouse into possession pending appeal, provided that he would stipulate that it was without prejudice and that he would honor the ultimate decision on appeal. These conditions would have imposed no greater obligation than would have been incumbent on Drinkhouse anyhow, but he refused to sign such a stipulation. In order to minimize damages, Parka rented the apartment to another tenant, who agreed to vacate if the Court of Appeals affirmed, which he did when that occurred.
Drinkhouse proceeded in the former action against Parka by contempt for violating the injunction, but the Appellate Division held (282 App. Div. 676): “In view of the offer by the plaintiff to permit the defendant to take possession subject to his vacating in the event of reversal of the prior judgment, we think that the finding of a willful contempt is unwarranted.”
Drinkhouse has now instituted this separate action for damages on account of his dispossession by Parka on June 30, 1951 until his resumption of possession in July, 1953 after the former decision by this court. This complaint alleges two causes of action, one for damages by reason of Drinkhouse’s removal from possession in violation of the State Residential Rent Law, and the other for treble damages under section 535 of the Real Property Law.
*87 Parka and its manager argue on this appeal that inasmuch as Drinkhouse was a statutory tenant or subtenant, having no contractual right to possession under any rental arrangement, whatever right to damages he may have must be based upon some statutory provision in the Rent Law expressly granting damages to him in this contingency. In support of this contention appellants cite David v. Fayman (298 N. Y. 669), Rosner v. Textile Binding & Trimming Co. (300 N. Y. 319), Schwartz v. Sterling Drug (300 N. Y. 493), and Magonigle Trucking Co. v. Tambini (302 N. Y. 617).
In our view, appellants ’ position is well taken. The principle of Rosner v. Textile Binding & Trimming Co. (300 N. Y. 319, supra) is applicable here. That case was decided under subdivision (d) of section 8 of the Commercial Rent Law (L. 1945, ch. 3, as amd.). That section, and the corresponding section of the Business Rent Law (L. 1945, ch. 314, as amd.), it will be recalled, authorize damages if a tenant is removed after the commencement of dispossess proceedings which are maintained on the assertion that the landlord requires possession of the premises for the landlord’s immediate and personal use. If such a contention is made by a landlord in bad faith, which may be evidenced by failure to resume possession within 30 days, a statutory right to damages is conferred upon the dispossessed tenant. In Bosner the tenant vacated under threat of the landlord, but before dispossess proceedings had been instituted. It was held that subdivision (d) of section 8 of the Commercial Rent Law applied only after legal proceedings had been begun, and that no cause of action lay for common-law fraud inasmuch as the remedy provided by subdivision (d) of section 8 was exclusive. The following quotation from the opinion by Judge Desmond is especially pertinent here: ‘‘ Plaintiffs argue, however, that regardless of the sufficiency of their first, or statutory, cause of action, they have pleaded, in their second count, a good common-law fraud case. The decisions are to the contrary. David v. Fayman (298 N. Y. 669) and Rosenbluth v. Sackadorf (298 N. Y. 761) necessarily mean that no action for fraud arises from such facts. Both those cases involved residential, not commercial, space, and, since those cases arose before the enactment in 1948 (L. 1948, ch. 213), of section 1444-a of the Civil Practice Act, residential tenants had no such right to sue as was, and is, given tenants of commercial *88 property by the above-quoted subdivision (d) of section 8 of the Commercial Bent Law. Both plaintiff David and plaintiff Bosenbluth had been evicted from their statutory tenancies, on petitions containing knowingly false statements, by their respective landlords (defendants), that the landlord intended * * * (in the Rosenbluth case, supra) to make alterations and improvements to the rented apartment. The holding in each case was that a tenant, evicted as the result of such false allegations had, in the absence of express statutory grant, no right of action at all.” (300 N. Y. 319, 324.)
The sentence pointing out that in the David and Rosenbluth cases {supra) the plaintiff had no relief inasmuch as section 1444-a of the Civil Practice Act had not then been enacted (analogous to Commercial Bent Law, § 8, subd. [d], in the case of residential property) tends to indicate that in the absence of an enabling statute Drinkhouse has no cause of action here. Without a provision granting damage for the removal of a statutory tenant there is no remedy, and, where such a statute exists, the remedy can be only that which the statute prescribes. This is in accordance with the '‘ familiar rule in the construction of statutes that where a new right is created, or a new duty imposed by statute, if a remedy be given by the same statute for its violation or non-performance, the remedy given is exclusive ” (Seely v. Tioga County Patrons Fire Belief Assn., 165 App. Div. 685, 689, citing City of Rochester v. Campbell, 123 N. Y. 405, 414; Matter of Kingswood Management Corp. [Salzman], 272 App. Div. 328, 330).
It therefore becomes incumbent upon us to examine the State Besidential Bent Law to discover whether a statutory authorization for damages has been included, and, if so, to determine whether it is being pursued in the instant action. The wrong charged by Drinkhouse does not consist in the procurement of an eviction certificate or dispossess order in bad faith, consequently section 1444-a of the Civil Practice Act (mentioned in Judge Desmond’s opinion in Rosner, supra) has no application. The particular wrong charged against Parka and its manager is entering Drinkhouse’s apartment and locking bim out. It has, of course, been declared by the former judgment that Drinkhouse had acquired the status of a statutory subtenant, and therefore could not be dispossessed except pursuant to the State Besidential Bent Law. Consequently the *89 act of the landlord in locking him out was in violation of statute, although it was not an invasion of any property right of Drink-house. The principal lease had ended, and he held no contractual or vested property right under the law of landlord and tenant. The landlord was prohibited from removing him for the benefit of society at large during the housing emergency.
“ A statutory tenant holds over not because he has any property right or estate in the premises, but because the emergency laws forbid his eviction.” (Wasservogel v. Meyerowitz, 300 N. Y. 125, 132, per Desmond, J.) We must look only to the provisions of the emergency act in order to ascertain whether Drinkhouse is entitled to any relief and what relief may be granted to him. Section 11 of the State Residential Rent Law is entitled “Enforcement”. Subdivision 5 grants to tenants the right to sue for overcharges in excess of the emergency rent and attorneys’ fees, including as much as treble the overcharge in case of willful violations. Whatever Parka may have done to Drinkhouse, he was not charged with excess rental. He was not charged at all, and paid no rent during the period while he was deprived of possession. The only other portion of this section which could be applicable would be subdivision 1, which states: “Whenever in the judgment of the commission any person has engaged or is about to engage in any acts or practices which constitute or will constitute a violation of any provision of section ten of this act, the commission may make application to the supreme court for an order enjoining such acts or practices, or for an order enforcing compliance with such provision, or for an order directing the landlord to correct the violation, and upon a showing by the commission that such person has engaged or is about to engage in any such acts or practices a permanent or temporary injunction, restraining order, or other order shall be granted without bond. Jurisdiction shall not be deemed lacking in the supreme court because the defense is based upon an order of an inferior court.”
This subdivision (unlike subd. 5) confers the cause of action exclusively on the Rent Commission, and does not permit the tenant himself to sue. Under subdivision 5 which has been mentioned regarding overcharges, if an action of that character is not instituted by a tenant it may be brought by the Rent Commission but not by both. The Legislature was conscious *90 of the difference between the institution of actions under this statute by a private party and by the Bent Commission. The language in subdivision 1 empowering only the Bent Commission to begin suits for injunction was not inadvertent. Where the violation of a requirement of this rent law consists in something other than an overcharge of rent, the only avenue of relief to the tenant is by an application to the Bent Commission to institute proceedings for appropriate relief. This is somewhat analogous to the situation in labor disputes where certain injunction actions can be prosecuted only by the National Labor Belations Board.
These rules did not prevent these parties from maintaining an action for declaratory judgment, to which Parka previously resorted. That is the action which was formerly in this court which resulted in a determination that Drinkhouse was a subtenant, and entitled to the protection of this emergency rent law. A declaratory judgment declares jural relationships, and is not self-executing. Section 473 of the Civil Practice Act permits actions for declaratory judgments to be joined with causes of action for other relief, and in the former action between these parties it was not only declared that Drinkhouse was entitled to possession as a statutory subtenant, but Parka was enjoined from depriving him of his right to resume possession. The point was not argued or considered whether Drinkhouse was entitled to an injunction as a private party to the dispute, nor whether under section 11 of the Bent Law an application for injunctive relief would have had to have been prosecuted by the Bent Commission.
Having obtained an injunction restraining Parka from keeping him out of possession, Drinkhouse had a remedy for damages by civil contempt in event that the injunction was violated by Parka. Contempt proceedings are taken in the action itself, and do not constitute a separate special proceeding (Ray v. New York Bay Extension R. R. Co., 155 N. Y. 102, 48 App. Div. 502, 506; Mutual Milk & Cream Co. v. Tietjen, 73 App. Div. 532; cf. Thompson v. Pennsylvania R. R. Co., 48 N. J. Eq. 105,108, 111, per Pitney, V. C.; 1 Joyce on Injunctions, §§ 279a, 280a). Drinkhouse did pursue his remedy by contempt, but his proceedings were dismissed, inasmuch as the offer by Parka to readmit him into possession of this apartment constituted compliance with the injunctive mandate *91 in the judgment. Merely attaching a condition that he would vacate if the Court of Appeals reversed and decided that he had no right to possession, was not contempt of court. Drink-house would have had to have done that anyway.
This leaves Drinkhouse in the position of being at most entitled to claim damages in the instant action for the period from June 30, 1951, when he was locked out, until the declaratory judgment was entered on January 8, 1952. If Drinkhouse has any cause of action for damages, they were sustained during the period before the entry of the declaratory judgment, after which he was offered to be restored to possession. Having no property right in the apartment, however, and being merely a statutory tenant, Drinkhouse’s remedies could be only those which the statute prescribes, and, inasmuch as no remedy is afforded by this statute for damages on account of his deprivation of possession from June 30, 1951 until the declaratory judgment, he fails upon both causes of action.
For a different reason also the second cause of action is insufficient, based on section 535 of the Real Property Law. That is the traditional statutory remedy of treble damages for forcible entry or detainer. Regardless of whether this section would relate in any event to the exclusion of a statutory tenant under the emergency rent laws, it is well established that it applies only where the force employed to oust a tenant is unusual, tends to bring about a breach of peace, and the entry is with a strong hand, or by a multitude of people, or in a riotous manner, or with personal violence, or with threat and menace to life and limb under circumstances which would naturally inspire fear and lead one to apprehend danger of personal injury if he stood up in defense of his possession (Fults v. Munro, 202 N. Y. 34; Arout v. Azar, 219 App. Div. 260). Mere trepass does not give rise to such an action, even when it is accompanied by “wrenching off the lock” (Bach v. New, 23 App. Div. 548; Schrier v. Shaffer, 123 App. Div. 543). Endeavoring to meet this requirement of the law, paragraph 11 of plaintiff’s second cause of action alleges that defendants ‘ ‘ wrongfully, maliciously, forcibly, and in violation of Section 535 of the New York Real Property Law, entered said apartment, changed the locks on the door thereof, threatened a breach of the peace should plaintiff attempt to re-enter said apartment, and since then have held and still hold forcible *92 possession of said apartment and hold and keep plaintiff out of said apartment by force or by putting him in fear of personal violence and a breach of the peace should he attempt to re-enter said apartment.” Except for the allegation that defendants changed the locks on the door, the rest of these allegations are conclusory. The eases under section 535 of the Beal Property Law, where recovery is allowed, are replete with allegations and evidence of the use of guns, clubs, threats to life, assaults and the like. Similar allegations are not found in this complaint.
The order appealed from is reversed, with costs in all courts, and the complaint dismissed. The questions certified are answered Nos. 1 and 2 in the affirmative (viz., Special Term did err in denying defendants’ lotions under rules 112 and 113 of the Buies of Civil Practice), and the third and fourth questions in the negative (viz., under the pleadings, plaintiff does not have a cause of action against either defendant under his first cause of action or his second cause of action).
Conway, Ch. J., Desmond, Dye, Fuld, Froessel and Burke, JJ., concur.
Order reversed, etc.