W. Vincent Grady, J.
This article 78 proceeding involves an interpretation of article 14 of the Civil Service Law (Taylor Law) as it affects summer school teachers.
On November 7,1968, the Poughkeepsie Area Summer School Teachers’ Association filed with the petitioners a petition for certification as exclusive negotiating unit for summer school teachers, librarians, supervisors and summer school principal. The respondent had previously declined recognition to this association. On February 7, 1969, a hearing was held before the trial examiner designated by the Public Employment Relations Board, at which the respondent was present. On April 3, 1969, a decision was rendered by the Director of Representation in which it was determined that the Poughkeepsie Area Summer School Teachers’ Association is entitled to recognition as an employee organization as defined in subdivision 6 of section 201 of the Civil Service Law and that such unit consists of all summer school teachers and librarians, excluding the principal and all other employees. This decision was affirmed by the petitioners by decision dated June 11, 1969.
This proceeding, authorized by subdivision 4 of section 210 of the Civil Service Law, is brought to enforce petitioners’ order directing the respondent to comply with the recognition of the Poughkeepsie Area Summer School Teachers’ Association and directing respondent to furnish a list of eligible voters in this unit of representation. The Director of Representation determined from the evidence produced before the Trial Examiner that the Poughkeepsie Area Summer School Teachers’ Association is an employee organization within the meaning and intent of subdivision 6 of section 201 of the Civil Service Law inasmuch as its primary purpose is the improvement of terms and conditions of employment of public employees. Respondent herein moves to dismiss the petition before the Trial Examiner on the ground that there was no power or jurisdiction to conduct the hearing since there were no summer school employees at the time the petition was filed. The Director of Representation made the following findings of fact: that the summer school program had been in existence for at least 33 years and approximately 1,600 students were enrolled in it during the 1968 summer session; that the program is continued for the purpose of providing academic credit for students; that teachers in the program were either year-round employees of the *894 respondent or of neighboring school districts, and that for the last four years such teachers constituted 60% of the summer school teaching staff; that approximately 50% of the teachers employed in 1966 were hired in 1967; that 60% of the teachers employed in 1967 were hired in 1968. The petitioners, in affirming the decision of the Director of Representation, held ‘ ‘ that the teachers herein have a sufficient continuity of employment so as to warrant their inclusion within a negotiating unit.”
While summer school has been held consecutively for 33 years in the City of Poughkeepsie, it is a voluntary or optional program of the Board of Education as distinguished from the program of compulsory education throughout the school year. No decision as to whether funds for a summer school program will be appropriated is made until after a public hearing is held and a budget is adopted in June of each year. Moreover, the operation of a summer school program requires the approval of the State Education Department (Administrative Handbook on Summer Secondary School, 1968, p. 3).
It appears that summer school teachers in the Poughkeepsie summer school area are hired by the principal, who does not begin to recruit his staff for the summer school until April or May preceding the summer school session. The actual employment of the school teachers does not begin until after the summer school budget is adopted late in June.
The question is, thus, presented whether the Poughkeepsie Area Summer School Teachers’ Association comes within the definition of an “ employee organization ” under subdivision 6 of section 201 of the Civil Service Law: “ an organization of any kind having as its primary purpose the improvement of terms and conditions of employment of public employees ”. Petitioners contend that their authority to determine and establish the appropriate units of representation is explicit under subdivision -5 of section 205 and section 207 of the Civil Service Law, and that judicial review of their determination is limited to a question of whether the determination 'J‘ lacks evidentiary support or was arbitrary or capricious, or that the Board deviated from the statutory standards ” (Matter of Civil Serv. Employees Assn. v. Helsby, 32 A D 2d 131, 134, affid. 25 N Y 2d 842). The statutory standards or criteria for determining the appropriate units of representation are set forth in subdivision 1 of section 207 of the Civil Service Law:
“ (a) the definition of the unit shall correspond to a community of interest among the employees to be included in the unit;
*895 “ (b) the officials of government at the level of the unit shall have the power to agree, or to make effective recommendations to other administrative authority or the legislative body with respect to, the terms and conditions of employment upon which the employees desire to negotiate; and
“ (c) the unit shall be compatible with the joint responsibilities of the public employer and public employees to serve the public.”
It is implicit in the standards set forth in the above section that there be in existence employees. It is clear that petitioners deviated from the statutory standards in determining that the Poughkeepsie Area Summer School Teachers’ Association was entitled to recognition where in fact there did not exist any persons who were employed as summer school teachers when the petition was filed. Subdivision 1 of section 207 requires an employee-employer relationship before a negotiating unit can be recognized. Petitioners contend that it makes no difference that when a petition is filed there are no summer school employees since a recognition and representation of such teachers is a continuing process effective the year round.
There is an uncertainty as to whether a summer school program will operate and whether a teacher will be accepted if the summer school program is conducted. The summer school program is, by its nature, of very short duration, and from year to year, there are changes in its curriculum. After the summer school terminates, the great majority of the summer school teachers employed therein return to their regular full time positions as teachers in the public school system. Their involvement with the summer school program has ceased and does not begin again until a summer school program is established for the following summer.
The court finds no language in the statute (Civil Service Law, art. 14) which indicates an intention on the part of the Legislature to give the Public Employment Relations Board the power to exercise any control over nonemployees. (See Helsby v. Board of Educ. of Cent. School Dist. No. 2, 59 Misc 2d 943.)
The petitioners contend that the rights granted to public employees as set forth in the Taylor Law (§ 202 — Right of organization; § 203 — Right of representation; and § 208 — Rights accompanying certification or recognition) do not terminate at the conclusion of the summer session. The six-week summer school program is to short a period for summer school teachers to have a real opportunity to form, join and participate in an employee organization or to meaningfully negotiate collectively with a public employer or to form an organization *896 which will be certified or recognized to represent the summer school teachers. Since summer school would end before effective negotiations could be completed, recognition of a summer school teachers association as an “ employee organization ” under subdivision 6 of section 201 of the Civil Service Law is meaningless.
The intent of the Legislature in adopting the Taylor Law is expressed in section 200 of the Civil Service Law, and throughout the statement of policy therein contained appears the term “ employees ”. The intent of the Legislature is the primary object sought in the interpretation of statutes (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, §§ 92 and 111). The Legislature did not intend to include within the scope of the term “ employees ” a person employed in a summer school program whose nature as herein discussed does not justify the application of the Taylor Law.
The petitioner had no power or jurisdiction concerning the Poughkeepsie Area Summer School Teachers’ Association since this unit was not comprised of any employees at the time it filed its petition. Accordingly, the petition is dismissed and the findings and order of the Public Employment Relations Board are hereby set aside.